IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 05-576-1 |
| | : | |
| PRINCE ISAAC | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.,** **September 10, 2007**

In this drug conspiracy and firearm distribution prosecution, I must decide whether to exclude physical evidence seized from Prince Isaac, sever his case from co-defendants and the witness intimidation charges from the drug and gun charges. I must also decide whether Isaac's prior convictions and acts of wrongdoing involving guns should be admitted against him at trial. For the reasons below, Isaac's motions to suppress[1] and to sever are denied. Except for Isaac's 2001 drug distribution conviction, which is excluded, the Government's motion *in limine* is granted.

**FINDINGS OF FACTS**

1. On November 1, 2004, Lancaster Pennsylvania Police Officer Gareth Lowe had been working as a police officer for two years. During his first two years with the police force, Officer Lowe had made more than 50 arrests, about 20 for heroin based on observation of heroin distribution paraphernalia. Five times he was a member of a drug surveillance team.

2. On November 1, 2004, while driving in his marked car, Officer Lowe saw James Cuffie and

[1] Although Isaac filed a motion seeking to suppress statements and physical evidence, the Government will not seek to admit the statements nor the cell phones in its case in chief. The Government would move to use the statements for impeachment purposes if Isaac testifies during trial. If Isaac decides to testify, I will determine the admissibility of the statements for impeachment purposes prior to Isaac's testimony. At this time, Isaac's motion to suppress these statements and cell phones is moot.

Prince Isaac walking together east of Beaver Street on the first block of West Andrew Street, in Lancaster.

3. Officer Lowe then saw Cuffie's left hand wrap around a clear plastic sandwich baggie with white items inside it. Based on his training and experience, Officer Lowe suspected drugs were inside the clear plastic sandwich baggie.

4. As Officer Lowe approached, he saw Cuffie give him a startled look, tighten his left hand around the clear plastic baggies, and try to hide the baggies by moving his hand toward his front. As Officer Lowe continued to approach Cuffie and Isaac, Cuffie held the baggies in front of his legs.

5. As Officer Lowe pulled the front of his vehicle to where Cuffie and Isaac were walking, he saw Cuffie struggle to put the clear baggies in his pants pocket. Officer Lowe immediately left his car, stopped Cuffie, and instructed him to put his hands on his head.

6. Officer Lowe repeated his instruction for Cuffie to remove his left hand from his pocket and to place it on top of his head. Officer Lowe called for back-up while he dealt with Cuffie.

7. As Officer Lowe dealt with Cuffie, Isaac protested. Officer Lowe turned his attention to Isaac and immediately recognized Isaac as a driver he had stopped two weeks before for traffic violations.[2] After the traffic stop but before this street encounter, Officer Lowe learned Isaac had an outstanding arrest warrant for terroristic threats. Officer Lowe had also been warned Isaac was armed and dangerous.

8. Officer Lowe instructed Isaac to calm down and to place his hands on top of his head.

---

[2] Two weeks before this street encounter, Officer Lowe had stopped Isaac from running a stop sign and for obstructing his windows with a large tv screen in the front windshield.

Officer Lowe then searched Cuffie and seized the following items: 53 clear plastic baggies of suspected heroin with a spider web and the words "go ahead" on them; 24 clear plastic corner tie baggies with suspected crack cocaine; $21.43; and a Nokia cell phone.

9. After searching Cuffie, Officer Lowe arrested Isaac for the outstanding warrant on terroristic threats. Officer Lowe then seized $2,008.30, two cell phones, and keys from Isaac. Isaac's money and cell phones were confiscated, but Isaac's keys were returned to him upon his release later that same day.

10. Prior to returning Isaac's keys, Officer Lowe used them to search Isaac's car where he found heroin. Officer Lowe then sent the heroin to be destroyed because the search was invalid.

11. Assistant United States Attorney Mark Miller proffered two witnesses who would testify they provided the Government with Isaac's cell phone number. The Government used the cell phone number the witnesses provided to subpoena Isaac's cell phone records from the cell phone company. The cell phone records derived from information provided to the Government by two independent sources rather than from the cell phones police found on Isaac's person on November 1, 2004.

**DISCUSSION**

The money seized from Isaac during his November 1, 2004 arrest and the cell phone records subpoenaed from the respective cell phone companies are admissible on different grounds. The $2,008.30 is admitted because it was seized incident to a lawful arrest. *Knowles v. Iowa*, 525 U.S. 113, 116 (1998). Searches incident to arrest are permitted because of "the need to disarm the suspect in order to take him into custody, and the need to preserve evidence for later use at trial." *Id*. As long as the arrest was lawful, the search incident to the arrest within the appropriate vicinity is also

lawful. In this case, Officer Lowe arrested Isaac on his knowledge of both the outstanding warrant for terroristic threats and the information he was potentially armed and dangerous. Officer Lowe searched Isaac's person and seized $2,008.30. This money is admissible against Isaac at trial because his arrest and subsequent search were lawful. *United States v. Myers*, 308 F.3d 251 (3d Cir. 2002); *Chimel v. California*, 395 U.S. 752 (1969) (search incident to arrest includes the defendant's person).

I do not need to address the issue of whether the actual cell phones are admissible against Isaac as evidence seized incident to lawful arrest.[3] The Government, however, seeks to introduce the cell phone records as derived from an independent source and not directly or indirectly from the actual cell phones in the Government's possession. Evidence from an independent source is "discovered lawfully, and not as a direct or indirect result of illegal activity." *United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992); *United States v. Sobolewski*, 229 Fed. Appx. 73, 76 (3d Cir. 2007). In applying the doctrine, I cannot consider evidence obtained from illegal searches or seizures to decide whether the evidence derived from an independent source. *See Herrold*, 962 F.2d at 1140; *Sobolewski*, 229 Fed. Appx. at 76. The Government proffered two witnesses who would testify they provided the police with Isaac's cell phone number. The Government used this cell phone number information to subpoena Isaac's cell phone records. No information derived from the cell phones was used to subpoena Isaac's cell phone records. If the two witnesses can testify at trial they provided the Government with Isaac's cell phone number, there is an independent source for the admission of the cell phone records. The cell phone records, therefore, are admissible

[3] The Government will not seek to admit the statements nor the phone in its case in chief. Law enforcement would have been prohibited from examining Isaac's cell phone without a warrant. *See* U.S. Const. IV (requiring warrants and probable cause for searches and seizures).

because they derived from an independent source.

I next consider Isaac's motions to sever co-defendants and offenses. Severance of co-defendants can only be granted if joint trial would compromise a defendant's trial rights. Fed. R. Crim. P. 14; *Zafiro v. United States*, 506 U.S. 534, 539 (1993). In considering severance of co-defendants, Federal Rule of Criminal Procedure 14[4] allows for severance only pending a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro*, 506 U.S. at 539. A serious danger which threatens to compromise a defendant's trial rights and would justify severance might occur in: (1) a complex, multi-defendant case with markedly different degrees of culpability; (2) a case where evidence is admissible only against one defendant; or (3) a case where evidence which exculpates one defendant is unavailable in a joint trial, e.g., where one defendant will call the other defendant as a witness. *Id.* The Third Circuit has held since *Zafiro*, claims based on mutually antagonistic defenses have usually been found insufficient to warrant severance without a strong showing that such specific rights were impaired. *See, e.g., United States v. Balter*, 91 F.3d 427 (3d Cir. 1996); *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992). Also, "finger-pointing and

---

[4] Rule 14 reads:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.
>
> (b) Defendant's Statements. Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.

Fed. R. Crim. P. 14

blame-shifting among coconspirators" does not justify separate trials. *United States v. Voight*, 89 F.3d 1050, 1095 (3d Cir. 1996) (citing *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994) (affirming trial court's denial of severance when co-conspirators denied any wrongdoing by blaming the other because jury could have believed both defenses and acquitted both)). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537. Further, defendants must show the prejudice to be more than just a greater likelihood of acquittal if tried alone. *Id.* at 539. Even if the defenses are mutually antagonistic, I can exercise my discretion to tailor the relief to be granted. *Id.* at 534-39.

Isaac has failed to show a serious risk a joint trial would compromise his specific trial rights or prevent the jury from making a reliable judgment about guilt or innocence. Isaac argues the other defendants' potential testimony against him and the high complexity of this drug case prove prejudice. Blame-shifting or mutually antagonistic defenses, however, are not enough to sever from the other defendants. *Voight*, 89 F.3d at 1095. As to the other defendants testifying against him, some of these defendants are available to the Government under their cooperating agreement to testify against him during a separate trial. Isaac would still have to defend against incriminating testimony from his co-defendants in a separate trial. I can redact any confessions incriminating Isaac and also provide the jury with adequate limiting instructions to remedy Isaac's concerns. *Zafiro*, 506 U.S. at 539; *see also Bruton v. United States,* 391 U.S. 123, 133-35 (1968) (redacting section of one defendant's confession that incriminated the second defendant). Isaac has failed to articulate or demonstrate how a limiting instruction or redaction would not adequately address any resulting prejudice. Overall, Isaac has failed to prove prejudice and persuade me to grant his motion to sever from his co-defendants.

Isaac also argues I should sever the witness intimidation counts in the second superseding indictment because the counts do not arise from the same set of acts as the drug and firearm counts. Isaac baldly asserts this joinder would prevent the jury from fairly evaluating either set of facts. I disagree. Offenses arising from the common act or series of conduct are properly joined and should not be severed. *See United States v. Eufrasio*, 935 F.2d 553, 570 (3d Cir. 1991). Federal Rule of Criminal Procedure 8(a) and (b)[5] "permit [j]oinder of offenses and defendants, respectively, when a transactional nexus exists between the offenses or defendants to be joined." *Eufrasio*, 935 F.2d at 570. When evaluating either joinder of offenses or defendants, courts focus on whether the offenses or defendants arise out of a common series of acts or transactions. *Id.*

The witness intimidation counts arose from a common series of acts closely connected to the drug conspiracy and firearm counts. Isaac's acts of intimidation were motivated by his desire to prevent the witnesses from testifying against him in the pending drug conspiracy and firearms case. The witnesses Isaac allegedly intimidated were scheduled to testify against Isaac in this drug conspiracy and firearm trial. Under Federal Rule of Criminal Procedure 8, joinder of these offenses

---

[5] Rule 8 reads:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8.

is not only required but proper. Thus, Isaac has also failed to show the resulting prejudice from joinder of the witness intimidation and drug and firearm counts. Morever, the witness intimidation charges would also be admissible as evidence of Isaac's consciousness of guilt for the drug conspiracy and firearm charges. *See United States v. Tyler*, 2003 WL 22016883, at *5 (E.D. Pa. June 19, 2003) (finding defendant's cover-up actions were appropriately related and demonstrated consciousness of guilt) .

I will now consider the Government's motion to admit evidence of Isaac's prior convictions and several acts of wrongdoing during the alleged conspiracy. Both Federal Rules of Evidence 404(b) and 609 permit admission of prior convictions for a proper purpose or for impeachment purposes. Under Rule 404(b), Isaac's 2001 drug distribution conviction cannot be admitted to show or prove defendant's character or predisposition to commit crime. Fed. R. Evid. 404(b). This conviction, however, can be admitted for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* In deciding whether to admit Isaac's drug distribution conviction, I must conduct a careful analysis under the four-part test announced in *Huddleston v. United States*, 485 U.S. 681 (1988).

In *Huddleston*, the Supreme Court directed trial courts to consider whether the 404(b) evidence: 1) has a proper purpose; 2) is relevant under Fed. R. Evid. 401; "3) its probative value must outweigh its potential for unfair prejudice; and 4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *Untied States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003) (citing *Huddleston* , 485 U.S. at 691-92 ; *United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002)). The Government "must clearly articulate how that evidence fits into a chain of logical inferences," none of which can lead to the character inference. *United States v.*

*Sampson*, 980 F.2d 882, 888 (3d Cir. 1992). I must then evaluate the Government's proffered reasons in the *Huddleston* test and provide a clear explanation "articulat[ing] reasons why the evidence also goes to show something other than character." *Id.*; *United States v. Murray*, 103 F.3d 310, 316 (3d Cir. 1997).

Isaac's 2001 drug distribution conviction can be used to show knowledge of drug distribution and is relevant. This conviction refutes any defense of mistake and assists the jury in more accurately deciding Isaac's intent and knowledge in the current drug conspiracy charges. It is also relevant under Rule 401[6] because it makes his knowledge of drug distribution and packaging more probable than it would be without the 2001 conviction. Thus, *Huddleston*'s first two prongs are satisfied.

In determining *Huddleston*'s third prong, however, I must evaluate whether the probative value of Isaac's 2001 possession with intent to deliver cocaine outweighs its prejudicial value. In this evaluation, I consider "the genuine need for the evidence" against the chance of improperly "influenc[ing] the jury to convict." *United States v. Barnes*, 2005 WL 2994698, *5 (E.D. Pa. Aug 16, 2005) (citing *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir.1988)). "Contested issues and other evidence and the strength of the evidence in proving the issue," assist in evaluating the need for evidence. *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir.1996) (quoting *United States v. Cook*, 538 F.2d 1000, 1003 (3d Cir.1976)).

In its case against Isaac, the Government has prepared two weeks' worth of evidence through numerous exhibits and witnesses, intimately linked to Isaac and his alleged drug conspiracy and

---

[6] Relevance is defined as "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

firearm charges. Specifically, the Government is expected to present physical evidence such as alleged profits from the drug conspiracy and the drugs and firearms allegedly used in furtherance of the conspiracy. Government witnesses are expected to testify Isaac ordered them to package and sell heroin and cocaine in furtherance of this conspiracy. Other Government witnesses, intimately related to Isaac and this conspiracy, will testify how they purchased firearms for Isaac's 50 Million Soldiers drug operation to protect the profits from drug sales and from rival groups. The evidence against Isaac in this drug conspiracy prosecution is compelling. Isaac's 2001 drug distribution conviction adds minimal value to the Government's case, but improperly influences the jury to convict him for the pending charges.

Although I could give a limiting jury instruction, the danger still exists the jury would convict Isaac based on his prior drug distribution conviction. Balancing the strength of the Government's case against the risk Isaac's felony drug conviction would influence the jury to convict leads me to exclude Isaac's 2001 conviction.

Isaac's prior false identification conviction may be admissible for impeachment purposes. To attack the testifying defendant's character of truthfulness, Fed. R. Evid. 609(a)[7] admits evidence

---

[7] Federal Rule of Evidence 609 reads:

(a) General rule.--For the purpose of attacking the character for truthfulness of a witness,

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> (2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime

of the defendant's prior convictions if I determine the conviction's probative value outweighs its prejudicial effect. Rule 609(a)(2) mandates admission of a witness's convictions, challenging the witness's veracity. A crimen falsi challenges the veracity of the witness's testimony and is therefore admissible. *See United States v. Smith,* 551 F.2d 348, 362 (D.C. Cir. 1976) (discussing how the Conference Committee identified false statement as one of the prior crimes covered by the rubric of "crimen falsi" (citing H.R. Conf. Rep. No. 93-1597, 93d Cong., 2d Sess. 9, *reprinted in* (1974) U.S. Code Cong. & Admin. News, pp. 7098, 7103)); *see also United States v. Beros*, 833 F.2d 455, 463 (3d Cir. 1987) (lying on a marriage license application is crimen falsi). Because a false identification is a false statement, it may be used to impeach Isaac if he testifies.

Lastly, I will address Isaac's acts of wrong doing involving guns. The indictment charges Isaac used straw purchases to acquire loaded firearms and then regularly carried them to: 1) collect drug debts; 2) fight off rival drug dealers; and 3) protect and retaliate against other gangs. Isaac's repeated possession of firearms would prove this indicted conduct. Federal Rule of Evidence 404(b) applies to prior bad acts, but it does not apply to intrinsic acts. "[A]cts are intrinsic when they directly prove the charged conspiracy." *United States v. Jenkins*, 188 Fed. Appx. 94, 95 (3d Cir. 2006) (citing *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002)). This type of evidence is offered as "direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused." *United States v. Gibbs*, 190 F.3d 188, 216-18 (3d Cir. 1999). While such proof could be substantially prejudicial, "the court would have no discretion to exclude it because it is proof of the ultimate issue in the case." *Id.* (citing 22 Charles A. Wright & Kenneth

---

required proof or admission of an act of dishonesty or false statement by the witness.

Fed. R. Evid. 609.

W. Graham, Jr., Federal Practice and Procedure § 5239, at 450-51 (1978)).

Evidence of Isaac carrying and possessing firearms is also direct evidence of the current drug and firearms charges. Government witnesses will testify Isaac carried and possessed firearms to protect and retaliate against other gangs, fight off rival drug dealers, or to collect drug debts. Isaac's possession of a firearm on October 18, 2004 linked to the Edward Cameron shooting is also direct evidence of his alleged use of a firearm to settle such a drug debt. 18 U.S.C. § 924(c)(using and carrying a firearm during commission of a drug trafficking crime). Government witnesses will also testify Isaac's repeated trips "down south,"were used to straw purchase firearms to protect and further his alleged drug operation in Lancaster, Pennsylvania. Evidence of the repeated possession of firearms, possession of the firearm used in the Edward Cameron shooting, and repeated trips "down south" done in furtherance of the drug conspiracy in Lancaster, Pennsylvania are admissible against Isaac at trial.

**CONCLUSIONS OF LAW**

1. The $2,008.30 seized from Isaac's person is admissible as evidence seized incident to a lawful arrest pursuant to an outstanding warrant for terroristic threats.
2. The cell phone records were derived from two independent witnesses. They did not derive from a search of the actual cell phones.
3. Isaac's case is properly joined with the other co-defendants because he has failed to show a joint trial would compromise his trial rights or prevent a jury from making a reasonable judgment about guilt or innocence.
4. The witness intimidation charges arose from a common series of acts or transactions with the drug and firearm charges. All of these charges are properly joined for trial under Federal

Rule of Criminal Procedure 8.

5. Isaac's 2001 drug conviction is inadmissible because its prejudicial value outweighs its probative value. Isaac's prior false identification conviction is admissible for impeachment purposes.

6. Isaac's October 18, 2004 possession of the firearm used in Edward Cameron's shooting is admissible as an intrinsic act and direct evidence of the alleged drug conspiracy.

7. Isaac's repeated trips "down south" and possession of firearms in Pennsylvania, New York, North Carolina, and South Carolina are admissible to the extent the evidence directly proves the alleged drug conspiracy in Lancaster, Pennsylvania.

Accordingly, I enter the following:

**ORDER**

______And NOW this 10th day of September, 2007, Defendant Isaac's Motion to Suppress (Docket 43) and Motions to Sever Co-Defendants and Counts are both DENIED. The Government's Motion *In Limine* (Docket 132) is GRANTED in part and DENIED in part. The Government's Motion is granted as follows: 1) Isaac's false identification conviction; 2) repeated possession of firearms; 3) October 18, 2004 possession of Edward Cameron shooting firearm; and 4) repeated trips "down south" are admitted. The Government's Motion as to Isaac's 2001 drug distribution conviction is denied.

BY THE COURT:

/s/ JUAN R. SÁNCHEZ, J.
JUAN R. SÁNCHEZ, J.