IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 05-576-1 |
| | : | |
| PRINCE ISAAC | : | |

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.,**                                                           **August 26, 2008**

Prince Isaac moves for judgment of acquittal, challenging the sufficiency of the evidence against him and the propriety of his arraignment.  The Government contends the evidence supports the jury's verdicts on all but one count and Isaac waived his arraignment.  Isaac also moves for a new trial alleging erroneous pre-trial rulings and improper trial conduct.  The Government maintains my pre-trial rulings and conduct during trial were appropriate.  Isaac's motion for judgment of acquittal will be granted as to four witness intimidation counts, but denied as to all other counts.  Isaac's motion for a trial and motion for an arrest of judgment are hereby denied.[1]

### FACTS

The Government proved Prince Isaac controlled a grand-scale drug enterprise in Lancaster, Pennsylvania.  By spring 2004, Isaac started to monopolize drug dealing in the city.  He frequently visited New York and South Carolina to obtain drugs and weapons needed to continue his operation.  Isaac ran this enterprise like a business - a multimillion dollar company using fear and violence to ensure its continued success.  In November 2004, local and federal authorities and arrested Isaac.  After a two-week trial, the jury convicted Isaac of drug, firearm, and witness intimidation charges.

---

[1] Isaac filed a Rule 34 motion for arrest of judgment, however his arguments fail to address this issue.  I deny this motion because it has no merit.

Isaac's convictions for conspiracy, engaging in a continuing criminal enterprise, and various drug distribution offenses are supported by the testimony of his co-conspirators and customers. Lindsay Colon, one co-conspirator and Isaac's former girlfriend, testified Isaac had no regular job between July 2004 and November 2004. (Trial Tr. vol. 2, 95-98, Sept. 11, 2007). During this time, Isaac made several trips to New York buy crack and heroin. *Id.* He also made trips to South Carolina to acquire guns. *Id.* at 128-29. On several occasions, Isaac brought drugs into Colon's apartment in quantities of 7 and 28 grams. *Id.* at 99-101.

Isaac frequently distributed and packaged drugs at the house of co-defendant, Dwight Williams. *Id.* at 104-05. This house was located at 25 West Filbert Street in Lancaster, PA, which is within 1000 feet of the Crystal Park. (Trial Tr. vol. 6, 12, Sept. 17, 2007). Isaac would bring crack to Williams's house and re-package it into bags to be sold for $20.00 or $50.00. (Trial Tr. vol. 2, 105-08, Sept. 11, 2007). In exchange, Isaac would supply Williams with crack to smoke. *Id.*

Isaac recruited, Michael Fowler, Tracy Ramirez, James Cuffie, and Steven Gonzalez to sell drugs for him. (Trial Tr. vol. 2, 118-200, Sept. 11, 2007). Fowler was 17 at the time he sold drugs for Isaac. (Trial Tr. vol. 7, 200, Sept. 18, 2007). Isaac gave Ramirez a "g-pack"[2] to sell on two separate occasions with the agreement she owed Isaac $600 out of the $1,000 value of the drugs. (Trial Tr. vol. 5, 198, Sept. 14, 2007). Isaac had an identical arrangement with Cuffie, who also sold two "g-packs" for Isaac. (Trial Tr. vol. 7, 26-32, Sept. 18, 2007). Cuffie received his drugs from Gonzalez, but knew they came from Isaac. *Id.*

Isaac's customers included Douglas Paulson and Michael and Deborah Sherr. Paulson purchased crack from Isaac "at least seven of eight times." (Trial Tr. vol. 4, 142-48, Sept. 13, 2007). In exchange for crack, Paulson would lend Isaac his car. *Id.* Paulson eventually introduced Isaac

---

[2] A "g-pack" is 7-10 grams of crack, worth approximately $1,000.

to the Sherrs. *Id.* On many occasions, Isaac also gave the Sherrs crack in exchange for the use of their car. (Trial Tr. vol. 4, 193-203, Sept. 13, 2007). Isaac needed a car to travel to New York and South Carolina. Because Isaac was frequently late in returning the car, the Sherrs attempted to terminate their arrangement. *Id.* In response, Isaac threatened the Sherrs and their families with death. *Id.*

On October 18, 2004, Isaac's co-conspirator Shamek Hynson shot Edward Cameron in the arm and abdomen. (Trial Tr. vol. 5, 155, Sept. 14, 2007). Isaac drove Hynson to and from the scene of the shooting. *Id.* at 151. Hynson shot Cameron because Cameron's girlfriend, Porscha Hunter fell short on a drug sale for Hynson and Isaac. *Id.* at 144. After Hunter failed to bring back all the money expected from the sale, Hynson confronted Cameron and demanded the money. *Id.* at 149. The confrontation escalated to Hynson shooting Cameron in the arm and abdomen. *Id.* at 155.

On November 1, 2004, Isaac and Cuffie were arrested for distributing crack and heroin. (Trial Tr. vol. 7, 114-15, Sept. 18, 2007). Police seized approximately $2000 in cash from Isaac and 53 packets of heroin and 34 small baggies of crack from Cuffie. *Id.* During his incarceration, Isaac wrote letters and telephoned Colon. (Trial Tr. vol. 3, 28-44, Sept. 12, 2007). Isaac also sent letters to Colon to be forwarded to other individuals, including a December 2005 letter to Williams. *Id.* at 45. In the letters to both Colon and Williams, Isaac encouraged them to "stay quiet" and "plead the fifth." *Id.* at 90. In none of the letters did Isaac tell Williams or Colon to lie to the police, prosecutors, or the Court. In the December 12, 2005 letter to Colon, however, Isaac mentioned the "dignity, principles, and street orientation" of rapper "Lil' Kim," whom Colon knew was incarcerated for perjury. (Trial Tr. vol. 3, 97, Sept. 12, 2007).

3

## DISCUSSION

On a motion for judgment of acquittal, I must decide "whether, after viewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). Indeed, "[o]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond reasonable doubt," may a court overturn the verdict. *United States v. McNeil,* 887 F.2d 448, 450 (3d Cir. 1990) (citing *Brandom v. United States*, 431 F.2d 1391, 1400 (7th Cir.1970), cert. denied, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971)).

Isaac first moves for acquittal on the conspiracy and continuing a criminal enterprise counts (Counts 1 and 2).[3] To prove conspiracy, the Government must show there was "an agreement, either explicit or implicit, to commit an unlawful act, combined with intent to commit an unlawful act, combined with intent to commit the underlying offense." *United States v. Brodie,* 403 F.3d 123, 134 (3d Cir. 2005). The alleged conspirators must share a "unity of purpose," the intent to achieve a common goal, and an agreement to work towards that goal." *United States v. Cartwright*, 359 F.3d 281, 286 (3d Cir. 2004). This requires a conspirator have knowledge of the conspiracy's specific objective. *Id.* at 286-87; *United States v. Idowu*, 157 F.3d 265, 266-67 (3d Cir. 1998); *United States v. Thomas*, 114 F.3d 403, 405 (3d Cir. 1997). The elements of the offense must be proved beyond a reasonable doubt, but the government may prove them entirely by circumstantial evidence. *Brodie*, 403 F.3d at 134. "To sustain a conspiracy conviction, the 'contention that the evidence also permits a less sinister conclusion is immaterial . . . [T]he evidence need not be inconsistent with

---

[3] Count 1 charges Isaac with conspiring to distribute cocaine base "crack" from at least May 2004 through about April 2005. Count 2 charges Isaac with engaging in a continuing criminal enterprise.

every conclusion save that of guilt.'" *Id.* (quoting *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2003)).

Isaac argues the ambiguous conspiracy evidence failed to prove his knowledge of or involvement in any illegal actions. He contends the Government did not prove his knowledge of the particular object contemplated by any conspiracy and he was instead convicted merely for "keeping bad company." Isaac's claims fail. The Government provided ample evidence of a conspiracy to sustain the jury's verdict.

The evidence proved Isaac ran a drug distribution conspiracy of at least five other participants: his former girlfriend Lindsay Colon, Shamek Hynson, Tracy Ramirez, Michael Fowler, and Steven Gonzales. Colon testified she sold crack for Isaac on more than four occasions and helped him package crack for redistribution. (Trial Tr. vol. 2, 105-06, Sept. 11, 2007). She testified to receiving instructions from Isaac to take orders over the phone and then to deliver the drugs. *Id.* On three occasions, Colon accompanied Isaac to Williams's house to sell crack. Colon also testified Isaac recruited Fowler, who subsequently brought Ramirez into Isaac's criminal enterprise. *Id.* at 118-20.

Isaac's financial arrangements with Ramirez and Cuffie strongly implicate him as leading this drug distribution conspiracy. Ramirez testified Isaac extended her $1000 worth of crack "on credit" and once she sold the crack she was required to give Isaac $600. (Trial Tr. vol. 5, 198, Sept. 18, 2007). The same profit sharing agreement existed between Isaac and Cuffie, who testified he split all the money he made selling drugs with Isaac 60/40, with Isaac receiving 60 percent. (Trial Tr. vol. 7, 26, Sept. 18, 2007). Although Cuffie received the crack from Gonzalez, he shared the proceeds with Isaac. *Id.* The establishment of a mutual economic stake strongly indicates a conspiratorial relationship. *United States v. Gibbs*, 190 F.3d 188, 201 (3d Cir. 1999); *see also*

5

*United States v. Price*, 13 F.3d 711 (3d Cir. 1994) (citing *United States v. Carbone*, 798 F.2d 21, 27 (1st Cir. 1986) (seller not receiving payment until after buyer sold drugs sufficient to show conspiracy)). Cuffie sharing the profits with Isaac supports the jury's conclusion Cuffie sold drugs for Isaac.

Isaac argues the credibility of several of these witnesses is questionable. Specifically, he points to Cuffie's nervousness on the stand and the lack of corroboration for some of Colon's testimony. It is not my role to judge the credibility of witnesses. Such a task is left exclusively to the jury, the fact finder. On a motion for judgment of acquittal, "[c]ourts must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). The jury's verdict suggests it found the witnesses credible.

Isaac's admissions offered against him at trial also support the jury's verdict. Several witnesses were present inside Colon's apartment when Isaac gave a threatening speech to his workers saying his cell phone "does ten thousand a week and you guys can't do that." (Trial Tr. vol. 2, 114-115, Sept. 11, 2007). Colon testified this was the same phone Isaac used to take orders for crack. *Id.* It was reasonable for the jury to conclude this was Isaac's method of scolding and managing his employees. Ramirez testified Isaac told her "no one in Lancaster was going to be selling drugs unless they got their product from him." (Trial Tr. vol. 5, 211, Sept. 14, 2007). The jury could reasonably have construed this quote as Isaac admitting he ran a drug distribution enterprise. Sufficient evidence supported Isaac's § 846 conviction for a drug conspiracy.[4]

---

[4] A conspiracy conviction may support Isaac's underlying conviction on Count 2 of the indictment for engaging in a continuing criminal enterprise (CCE), violating § 848. *United States v. Fernandez*, 822 F.2d 382, 385 (3d Cir. 1987). Conspiracy is a lesser included offense of engaging in a continuing criminal enterprise. *Rutledge v. United States*, 517 U.S. 292, 300 (1996). Entering a judgment on both convictions violates a defendant's constitutional right against double jeopardy.

Isaac's second challenge on his motion for acquittal involves the conviction for continuing a criminal enterprise (CCE). To convict for CCE, the Government must prove Isaac committed: (1) a felony violation of the federal narcotics law (2) as part of a continuing series of violations (3) in concert with five or more persons (4) for whom the defendant is an organizer or supervisor (5) from which he derives substantial income or resources. *United States v. Fernandez*, 822 F.2d 382, 384 (3d Cir. 1987).

The evidence also supports the CCE conviction. Isaac's involvement in the drug distribution conspiracy establishes § 848's first two elements. The third element is satisfied because at least five persons, Isaac, Colon, Hynson, Ramirez, Fowler, Williams, and Gonzales, were involved in this criminal enterprise. The evidence also supports Isaac held some managerial position, satisfying the fourth prong. It is not necessary for defendant to act as the dominant organizer or manager of the criminal enterprise. *United States v. Losada*, 674 F.2d 167, 174 (2d Cir. 1982). The Government proved Isaac was a manager with evidence he directed others to package and distribute crack.

The fifth element requires the defendant derive substantial income from the operation. "The statute does not prescribe the minimum amount of money required to constitute 'substantial' income, but the language clearly was intended to exclude trivial amounts derived from occasional drug sales." *Id.* at 173. The Second Circuit in *Losada* found profits of $2,000 over a four-year period satisfied this element. During Isaac's trial, testimony showed Isaac boasted earning more than $10,000 each week from his drug enterprise. Thus, the jury reasonably convicted Isaac of engaging in a CCE.

---

*Id.* I will address this during sentencing. *Id.*

Isaac next contends the evidence is insufficient to establish he distributed crack with regards to seven counts (Count 3, 5, 7, 8, 10, 12, and 14). The evidence, however, was more than sufficient to sustain the jury's guilty verdict on all these counts.

Counts 3, 5, 7, 8, and 10 pertain to distribution of a controlled substance. To prove a defendant guilty of distribution of a controlled substance, the government must prove beyond a reasonable doubt the defendant (1) knowingly and intentionally, (2) distributed to another person, (3) a mixture or substance containing a detectible amount of cocaine base ("crack"). 21 U.S.C. §841(a)(1). For several convictions, the amount of crack could enhance Isaac's potential sentence. For these enhancements, the Government must prove the defendant distributed the requisite quantity of drugs beyond a reasonable doubt. *United States v. Sanchez-Gonzalez*, 294 F.3d 563, 565 (3d Cir. 2002); *see Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000).

The Government presented sufficient evidence to sustain the distribution convictions. Specifically, the testimony of Douglas Paulson, and Deborah and Michael Sherr supports the jury's guilty verdict on Count 3 charging Isaac with distributing crack around May 2004. Paulson testified to meeting Isaac in 2004, frequently purchasing crack from Isaac, and eventually introducing Isaac to the Sherrs, whom he also saw purchase crack from Isaac. Deborah Sherr testified she met Isaac in April or May of 2004. (Trial Tr. vol. 4, 136-46, Sept. 13, 2007). The Sherrs testified they lent Isaac their car in exchange for crack. *Id.* at 136-46.

Isaac argues the evidence is insufficient because no expert testified the distributed substances were crack. Neither expert testimony nor chemical analysis is required for a jury to properly find the substance distributed was crack. The jury decides whether the statute prohibits the substance in question. *United States v. Scott,* 725 F.2d 43, 45 (4th Cir. 1984). "Lay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis

to establish the identity of the substance involved in an alleged narcotics transaction." *United States v. Stewart,* 179 Fed. Appx. 814, 818 (3d Cir. 2006) (quoting *United States v. Dolan,* 544 F.2d 1219, 1221 (4th Cir. 1976)).   The Government may establish the identity of a substance through cumulative circumstantial evidence. *Griffin v. Spratt,* 969 F.2d 16, 22 (3d Cir. 1992). "So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable." *Id.* (quoting *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir. 1988)).

Here, the Government presented evidence from several experienced crack users, including Paulson and the Sherrs, they received crack from Isaac. This testimony established the amount paid for the substance, its appearance, and its effects. This evidence was more than sufficient support for the jury to find Isaac guilty of distribution of crack in May 2004.

Isaac next disputes Count 5 charging him with distributing crack around August 2004. The jury found beyond a reasonable doubt the amount in question was five grams or more. Colon testified she moved in with Isaac in July 2004, at which time Isaac was selling crack. (Trial Tr. vol. 2, 94-132, Sept. 11, 2007). She testified he continued to sell crack in the following months and she even helped him package and distribute the drugs. *Id.* On two occasions, Colon saw Isaac packaging more than 20 bags full of crack. *Id.* The quantities she saw Isaac packaging for sale ranged in size from 7 to 28 grams. *Id.* On one occasion, Isaac left Colon with 28 grams of crack while he went to South Carolina to purchase guns. *Id.* Colon testified she sold approximately 20 grams from this supply. *Id.* Colon testified Isaac was getting more than ten calls each day on his cell phone to deliver drugs. This evidence sufficiently supports Isaac's conviction of distributing crack around August 2004.

Isaac next challenges Count 7 charging him with distributing crack between July 2004 and October 18, 2004 on the grounds of Ramirez lacked credibility. Ramirez testified Isaac personally gave her a "g-pack." (Trial Tr. vol. 5, 198-200, Sept. 14, 2007). After selling this "g-pack" she handed Isaac his $600 share of the proceeds. *Id.* A few days later Isaac gave Ramirez a second "g-pack." *Id.* She testified Isaac became angry because she used some of the money earned from the second "g-pack" to buy an 8-ball. Fearing for her life, she ran from Isaac and encountered Officer Dale Stewart. *Id.* at 205. Officer Stewart testified this occurred on October 18, 2004. *Id.* at 134-35. The jury, not the Court, decides the weight of her testimony. Thus, this conviction stands.

Isaac also moves for acquittal on Counts 8 and 10 charging him with distributing crack around October 24, 2004 and October 27, 2004, respectively. Isaac distributing crack to Cuffie on two separate occasions in late October 2004 support these convictions. Cuffie testified Isaac brought him from New York to Lancaster. (Trial Tr. vol. 7, 4, Sept. 18, 2007). He further testified Gonzalez gave him 10 grams of crack to sell for Isaac. *Id.* at 25-27. Cuffie had the same financial arrangement with Isaac as did Ramirez, receiving 40 percent of the value of the "g-pack" ($400 out of $1,000). *Id.* Although Cuffie testified he received the drugs from Gonzalez, he testified to giving the profits to Isaac and knowing Gonzalez worked for Isaac. *Id.* at 31-32. Cuffie also testified going to Williams's crack-house with Isaac and being arrested with Isaac on November 1, 2004. *Id.* at 53; 109-15. Cuffie reluctantly testified, but the jury convicted Isaac in Counts 8 and 10.

Isaac also moves for acquittal on Count 12 charging him with employment of a minor to distribute crack between July 2004 and October 18, 2004. Title 21 U.S.C. § 861(a)(1) criminalizes any person at least eighteen years of age to knowingly and intentionally employ, hire, use, persuade, induce, entice, or coerce, another under eighteen years of age to distribute drugs. The evidence supports this conviction as well. Ramirez testified Fowler also recruited her to sell drugs for Isaac.

(Trial Tr. vol. 5, 187-194, Sept. 14, 2007). Detective Michael Winters testified he obtained Michael Fowler's birth certificate and learned Fowler was born on December 10, 1986, making him 17 years old during July to October 18, 2004. (Trial Tr. vol. 7, 200, Sept. 18, 2007). Detective Winters further testified Isaac's date of birth is November 30, 1983, making him 20 years old at this time. *Id.* at 201. The evidence showed Isaac was over 18, Fowler was under 18, and Fowler distributed drugs for Isaac.

Isaac's final challenge as to the drug distribution charges addresses Count 14 : distribution and aiding and abetting the distribution of crack within 1000 feet of a public park. 21 U.S.C. § 860. To convict, the Government must prove beyond a reasonable doubt the defendant "distributed, possessed with intent to distribute, or manufactured a controlled substance in or on, or within one thousand feet of . . . a playground." *Id.* A conviction for aiding and abetting requires another person committed the substantive offence and the aider and abetter knew of this commission and acted with intent to facilitate. *United States v. Dixon*, 658 F.2d 181, 189 (3d Cir. 1981).

Isaac contends the measurement taken by Detective Jeffrey Bell started from the corner of the block, not the site of the alleged transaction. Detective Bell, however, testified he measured the distance from the eastside corner of Williams's residence at 25 West Filbert Street to Crystal Park. The distance was 741 feet, 6 inches. (Trial Tr. vol. 6, 12-15, Sept. 17, 2007). A GPS reading of approximately 700 feet corroborated Detective Bell's measurement. *Id.* The testimony further established Crystal Park is a public park and 25 West Filbert is a private residence. *Id.* As previously discussed, several witnesses testified to seeing Isaac packaging and distributing crack in Williams's residence. Sufficient evidence supported the jury finding Isaac aided and abetted the distribution of crack at 25 West Filbert which was within 1000 feet of a playground. Therefore,

Isaac's motion for judgment of acquittal regarding Count 14 and all previous six crack distribution charges is denied.

Isaac next moves for a judgment of acquittal on his firearm conviction. Count 17 charges Isaac with aiding and abetting the using and carrying of a firearm during in furtherance of a drug trafficking crime in the shooting of Edward Cameron on October 18, 2004. 18 U.S.C. § 924(c)(1)(iii). This statute criminalizes the use of , carrying, or possession of a firearm in furtherance of a drug trafficking crime. *Id.* If the firearm was discharged, a convicted individual faces a 10 year minimum. *Id.* In order "[t]o establish liability for a crime based on an aiding and abetting theory, the government must prove that the underlying crime occurred and that the defendant knew of the crime and attempted to facilitate it." *United States v. Gordon,* 290 F.3d 539, 547 (3d Cir. 2002). Mere knowledge does not sustain a conviction. *Id.* Instead, the Government must prove the defendant had specific intent to facilitate the drug trafficking crime. *Id.* "A defendant can be convicted of aiding and abetting a violation of § 924(c)(1) without ever possessing or controlling a weapon if the defendant's actions were sufficiently 'intertwined with, and his criminal objectives furthered by' the actions of the participant who did carry and use the firearm." *Id.* (citing *United States v. Price*, 76 F.3d 526, 530 (3d Cir. 1996)). This requires proof a defendant participated in the substantive offense as something he desired and sought to bring about. *United States v. Garth*, 188 F.3d 99, 113 (3d Cir. 1999).

As with Isaac's previous convictions, sufficient evidence supports this conviction as well. Prior to the night of the shooting, Cameron's girlfriend, Porscha Hunter received crack from Hynson and owed him money for the drugs. (Trial Tr. vol. 5, 143-59, Sept. 14, 2007). On October 18, 2004, Isaac drove Hynson to the corner of Howard and Pershing Street. *Id.* Once there, Isaac and Hynson encountered Cameron and Hynson yelled, "Where is Porscha?" After Cameron responded he did

12

not know, the car made a left and came back around the block. *Id.* Once the car pulled back around

the block, Hynson exited the car, confronted and shot Cameron. *Id.* After the shooting, Hynson

entered the car and Isaac drove away. *Id.*

A reasonable jury could conclude in addition to acting as the getaway driver, Isaac could

have reasonably foreseen the possibility Hynson would be armed. *See United States v. Gilliard,* 248

Fed. Appx. 462, 464-65 (3d Cir. 2007) (affirming § 924(c) aiding and abetting conviction when the

defendant merely acted as a look out and getaway driver).  The jury also heard ample evidence

regarding the guns possessed and carried by each defendant and trips to South Carolina to purchase

more guns.  Isaac's jury, thus, reasonably considered his trips to South Carolina to purchase guns

and his role as the get away driver as evidence Isaac foresaw the possibility Hynson was armed the

night Hynson shot Cameron.

Isaac also moves for judgment of acquittal on the five witness intimidation counts (Counts

24, 22, 25-27).  To sustain these convictions, the Government must show Isaac (1) knowingly, (2)

intimidated or used physical force against a potential witness, or corruptly persuaded such persons,

or attempted to do so, (3) with the intent to influence, delay, or prevent the testimony of such person

in an official proceeding.   18 U.S.C. § 1512.  "The issue whether a communication is a threat is a

question of fact to be left to the jury." *United States v. Matthews,* 431 F.3d 1296, 1310 (11th Cir.

2005) (quoting *United States v. Taylor,* 972 F.2d 1247, 1252 (11th Cir. 1992)).  "If a reasonable

recipient, familiar with the context of the communication, would interpret it as a threat, the issue

should go to the jury." *Id.* (quoting *Martin v. United States,* 691 F.2d 1235, 1240 (8th Cir. 1982)).[5]

---

[5] *Taylor* and *Martin* addressed 18 U.S.C. § 876, which prohibits using the mails to make threatening
communications.

13

Isaac asserts these letters do not rise to the level of tampering with a witness under 18 U.S.C. § 1512. The Government contends Isaac's encouragement of witnesses to stay quiet violates this statute. I will deny Isaac's motion as to Count 24, but grant his motion as to Counts 22, 25-27 because the evidence does not support these convictions.[6]

Count 24 charges Isaac with tampering with a witness (Lindsay Colon), by letter, around December 12, 2005. The letter sent by Prince Isaac to Lindsay Colon on December 12, 2005 encouraged Colon to imitate "Lil' Kim," whom Colon knew had been sent to prison for perjury, and the importance of not breaking the "code of silence." (Trial Tr. vol. 3, 94-96, Sept. 12, 2007). The letter further referred to all the enemies Colon made by previously assisting the Government. The jury could reasonably construe this reference as a threat to silence her. Thus, the evidence supports this conviction.

The evidence, however, does not support the remaining witness intimidation convictions. The question regarding these remaining counts is whether "corrupt persuasion" existed. *United States v. Silas*, 81 Fed. Appx. 758, 760 (3d Cir. 2003). The term "corrupt persuasion" has been interpreted to include "attempting to bribe someone to withhold information and attempting to persuade someone to provide false information to federal investigators." *United States v. Farrell*, 126 F.3d 484, 488 (3d Cir. 1997); *see United States v. Davis*, 183 F.3d 231, 249 (3d Cir. 1999) (discussing *Farrell*). The *Davis* Court further noted a "non-coercive attempt to persuade a coconspirator who had a Fifth Amendment right not to disclose information about the conspiracy to refrain, in accordance with that right, from volunteering information to investigators" does not show corrupt persuasion. *Davis*, 183 F.3d at 249 (citing *Farrell*, 126 F.3d at 487).

---

[6] Count 26 concerns a letter allegedly sent by Isaac on February 25, 2006. The Government concedes no testimony was offered concerning the February 25th letter. Therefore, Isaac's motion for judgment of acquittal with respect to Count 26 is granted.

Count 22 involves Isaac's letter and telephone conversation with Colon around October-November 2005. The jury did not hear any evidence regarding the content of any telephone conversations between Isaac and Colon. Colon stated she did have telephone contact with Isaac; but Colon testified Isaac did *not* instruct her to "plead the fifth" over telephone and instead did so by letter. (Trial Tr. vol. 3, 38; 92, Sept. 12, 2007). Regarding the October and November letters, the jury only heard testimony on the October 12, 2005 letter (Count 23). This letter encourages Lindsay Colon to exercise her Fifth Amendment right to remain silent *Id.* at 187-92. Under *Davis*, this does not rise to the level of "corrupt persuasion." *Davis,* 183 F.3d at 249.

Counts 25 and 27 involve December 2005 letters to Colon and Williams, respectively.[7] In his letter to Colon, Isaac never attempted to bribe her, nor did he ask her to withhold or lie to investigators. He merely asked her to marry him and told her he did not want her to go "hollering at anybody." (Trial Tr. vol. 3, 217, Sept. 12, 1007). This fails to show "corrupt persuasion." In his letter to Williams, Isaac merely encourages Williams to exercise his Fifth Amendment right to remain silent. He does not ask Williams to do anything improper or unlawful. *Id.* at 198-99. Without evidence of "corrupt persuasion," Isaac's motions for judgment of acquittal with respect to Counts 22, 25, and 27 are granted.

Isaac also moves for acquittal on his heroin distribution charges, but on grounds of improper arraignment. The object of arraignment is to inform the accused of the charges against him and obtain an answer from him. *Garland v. Washington*, 232 U.S. 642, 644 (1914). Courts must analyze whether the defendant experienced prejudice. No prejudice exists where: (1) the defendant receives a copy of the indictment; (2) the defendant has representation; (3) the defendant knows the

---

[6] Although Isaac's brief does not mention Count 27 as a ground for judgment of acquittal, he does address to Count 27's flaws. I shall thus address the substantive argument.

charges against him and had them read to him in open court; and (4) the defendant acknowledged the changes by pleading not guilty. *United States v. Bey*, 499 F.2d 194. 201 (3d Cir. 1974). Here, Isaac meets all four criteria. Improper arraignment, thus, did not prejudice Isaac. Additionally, Isaac never made a specified objection to the lack of formal arraignment until now. The Supreme Court has held where a defendant failed to make a specific objection to the lack of formal arraignment before trial, the right was waived. *Garland*, 232 U.S. at 645. Because no prejudice resulted and Isaac failed to specifically object before trial, the heroin convictions stand.

In addition to moving for a judgment of acquittal, Isaac also moves for a new trial based on my alleged errors before and during trial. Isaac argues I erred by not severing defendants, not severing counts, and admitting 404(b) evidence of Isaac's involvement in gun activities. Isaac further asserts my conduct during trial denied him of his Sixth Amendment rights and resulted in an improper jury charge. The Government maintains my pre-trial rulings were correct, Isaac's Sixth Amendment rights were respected, and the jury charge was proper. I agree.

A district court "may vacate a judgment and order a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. A court may grant a motion for new trial if it finds errors occurred during the trial, and it is reasonably possible such error, or combination of errors, substantially influenced the jury's decision. *United States v. Copple*, 24 F.3d 535, 547 n.17 (3d Cir. 1994). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the government, but instead exercises its own judgment in assessing the government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

Isaac contends the Court erred by not severing the trials for Isaac and his co-defendants. Severance of co-defendants can only be granted if joint trial would compromise a defendant's trial rights. Fed. R. Crim. P. 14; *Zafiro v. United States*, 506 U.S. 534, 539 (1993). In considering

severance of co-defendants, Fed. R. Crim. Pro. 14 allows for severance only pending a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro*, 506 U.S. at 539.  A serious danger which threatens to compromise a defendant's trial rights and would justify severance might occur in: (1) a complex, multi-defendant case with markedly different degrees of culpability; (2) a case where evidence is admissible only against one defendant; or (3) a case where evidence which exculpates one defendant is unavailable in a joint trial, e.g., where one defendant will call the other defendant as a witness.  *Id.*

The Third Circuit has held since *Zafiro*, claims based on mutually antagonistic defenses have usually been found insufficient to warrant severance without a strong showing specific rights were impaired. *See, e.g., United States v. Balter*, 91 F.3d 427 (3d Cir. 1996); *McGlory*, 968 F.2d 309, 340 (3d Cir. 1992).  Also, "finger-pointing and blame-shifting among coconspirators" does not justify separate trials. *United States v. Voight*, 89 F.3d 1050, 1095 (3d Cir. 1996) (citing *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994) (affirming trial court's denial of severance when co-conspirators denied any wrongdoing by blaming the other because jury could have believed both defenses and acquitted both)). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537.  Further, defendants must show the prejudice to be more than just a greater likelihood of acquittal if tried alone. *Id.* at 539.  Mere allegations of prejudice are insufficient to meet the heavy burden required for severance.  The defendant must "pinpoint clear and substantive prejudice resulting in an unfair trial." *McGlory*, 968 F.2d at 340.

Isaac has failed to show the joint trial compromised his specific trial rights or prevented the jury from making a reliable judgment as to his guilt.  Isaac argues the prejudice resulting from being

17

tried with Hynson was twofold.  First, the Government presented photos of drugs confiscated from Hynson's Utica home and photos of Hynson holding a large amount of cash.  Second, Isaac argues he was prejudiced by the taped phone conversation between Hynson and Talonda Williams in which Hynson made incriminating statements.  Both arguments fail because the jury demonstrated their ability to differentiate between the actions of the two actors.  Here, the jury convicted Hynson on count 16, yet acquitted Isaac on the same charge.  Any minimal prejudice resulting from this joint trial did not overcome the federal system's preference for joint trials of defendants who are indicted together.  *Zafiro*, 506 U.S. at 537.

Isaac also argues I erred in not severing the witness intimidation counts in the second superseding indictment because the counts do not arise from the same set of acts as the drug and firearm counts.  Offenses arising from a common act or series of conduct are properly joined and should not be severed.  *See United States v. Eufrasio*, 935 F.2d 553, 570 (3d Cir. 1991).  Fed. R. Crim. P. 8 permits joinder of offenses when a transactional nexus exists between the offenses to be joined.  *Id.* at 570.  When evaluating joinder of offenses, courts focus on whether the offenses arise out of a common series of acts or transactions.  *Id.*

The witness intimidation counts arose from a common series of acts closely connected to the drug conspiracy and firearm counts.  Isaac's acts of intimidation were motivated by his desire to prevent the witnesses from testifying against him in the pending drug conspiracy and firearms case.  The witnesses Isaac allegedly intimidated were scheduled to testify against Isaac in this drug conspiracy and firearm trial.  Under Fed. R. Crim. P. 8, joinder of these offenses is not only proper but required.  Isaac has also failed to show the resulting prejudice from joinder of the witness intimidation and drug and firearm counts. Moreover, the witness intimidation charges would also be admissible as evidence of Isaac's consciousness of guilt for the drug conspiracy and firearm

18

charges. *See United States v. Tyler*, 2003 WL 22016883, at *5 (E.D. Pa. June 19, 2003) (finding defendant's cover-up actions were appropriately related and demonstrated consciousness of guilt).

Isaac further contends I erred by instructing him he could not appeal the denial of his pre-trial motion for severance of counts. Title 28 U.S.C. § 1291 does not permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). Orders denying severance are interlocutory and not ordinarily appealable. *United States v. Garber*, 413 F.2d 284, 286 (S.D.N.Y. 1969). A "collateral order" exception, however, does exist. *Cohen*, 337 U.S. at 546. These are only those cases, "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* A motion for severance of counts does not fall within this narrow exception. *See Flanagan v. United States,* 465 U.S. 259, 266 (1984) (stating denials of motions to dismiss an indictment for violating the Double Jeopardy Clause or Speech or Debate Clause and bail reduction satisfy the collateral order exception).

Isaac argues I erred in admitting evidence he possessed the gun used to shoot Cameron, frequently carried guns, and repeatedly visited "down south" to obtain guns. Federal Rule of Evidence 404(b) applies to prior bad acts, but it does not apply to intrinsic acts. "[A]cts are intrinsic when they directly prove the charged conspiracy." *United States v. Jenkins*, 188 Fed. Appx. 94, 95 (3d Cir. 2006) (citing *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002)). This type of evidence is offered as "direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused." *United States v. Gibbs*, 190 F.3d 188, 216-18 (3d Cir. 1999). While such proof could be substantially prejudicial, "the court would have no discretion

19

to exclude it because it is proof of the ultimate issue in the case." *Id.* (citing 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239, at 450-51 (1978)).

Evidence of Isaac carrying and possessing firearms is also direct evidence of the current drug and firearm charges. Isaac's possession of a firearm on October 18, 2004 linked to the Cameron shooting is also direct evidence of his alleged use of a firearm to settle a drug debt. 18 U.S.C. § 924(c)(using and carrying a firearm during commission of a drug trafficking crime). Evidence of the repeated possession of firearms, possession of the firearm used in the Cameron shooting, and repeated trips "down south" done in furtherance of the drug conspiracy in Lancaster, Pennsylvania were properly admitted against Isaac.

Isaac also moves for a new trial because of three alleged Sixth Amendment violations. These violations are: my denying his request to subpoena one defense witness and school records; my admonishments and restrictions during his closing argument; and holding two sidebar conferences without Isaac while he acted *pro se*. These arguments fail.

All defendants have a constitutional right to represent themselves. *Faretta v. California*, 422 U.S 806, 813 (1975). However, "the right of self representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural or substantive law." *Id.* at 834. In evaluating a defendant's right to self-representation, the primary focus is whether the defendant had a fair chance to present his case in his own way. *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).

Isaac contends he deserves a new trial because the court improperly refused his request to subpoena one witness (identified as "Beverly") and to issue a subpoena *ducus tecum* for the school records of himself and Cuffie. Isaac argues the school records would prove he never attended school with Cuffie, contradicting Cuffie's testimony, and the testimony of "Beverly" would contradict

Ramirez's testimony Isaac sold crack in "Beverly's" apartment.  Few rights are more fundamental than that of an accused to present a defense. *Taylor v. Illinois,* 484 U.S. 400, 408 (1988).  This right, however, is not absolute.  The need for efficient administration of justice must be weighed in balance with a defendant's right to compulsory process. *Taylor,* 484 U.S. at 416.[8]

The Third Circuit has adopted a three-prong test to determine whether the limitation on a right to present witnesses violates the defendant's constitutional rights. *Gov't of the Virgin Islands v. Mills,* 956 F.2d 443, 445 (3d. Cir 1992).  First, defendant must be deprived of the opportunity to present evidence in his favor. *Id.* at 446.  Second, the excluded testimony must have been material and favorable to his defense. *Id.* Finally, the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose. *Id.*

Isaac fails *Mills's* second prong requiring materiality.  "A mere showing by the accused that some relevant evidence was excluded is insufficient." *United States v. Cruz-Jiminez,* 977 F.2d 95, 100 (3d Cir. 1992) (citing *Mills,* 956 F.2d at 446).  Instead, the accused must demonstrate "the testimony would have been both material and favorable to his defense." *Mills,* 956 F.2d at 446 (citing *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982)).  "Evidence is material 'only

---

[7] The *Taylor* Court acknowledged:

> A trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id.* at 416.

if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" *Cruz-Jiminez*, 977 F.2d at 100 (citing *Valenzuela-Bernal,* 458 U.S. at 967).

Here, presenting these school records would have only impeached Cuffie by demonstrating he never attended the same school as Isaac. The Government and Defense counsel attacked Cuffie's credibility.   One more inconsistency, concerning how the witness first met Isaac, would not reasonably have affected the jury's findings.  Such evidence was not material.

The testimony of "Beverly" would have potentially contradicted Ramirez's testimony. Ramirez testified Isaac gave her a "g-pack" at a residence on South Queen Street.  (Trial Tr. vol. 5, 194, Sept. 14, 2007). Isaac argues "Beverly" would have testified she lived at the residence where this allegedly happened.  "Beverly," however, never met Isaac.  If "Beverly" were to testify consistent with Isaac's contention, such testimony would likely have minimal effect in impeaching Ramirez. This evidence also lacks materiality. Both of Isaac's claims fail under the *Mills*'s second prong, thus the denial did not violate Isaac's Sixth Amendment rights.

Isaac also contends I violated his Sixth Amendment rights by admonishing him during closing arguments and denying him the same movement as the other attorneys.  Each of these contentions must fail.   My admonitions during Isaac's closing argument were all in response to Isaac testifying to matters not contained in the record.  When Isaac elected to proceed *pro se*, I warned him he had to stay within the record and not make argument based on facts outside of the record.  Each admonition during his closing argument was appropriate.

I permitted Isaac to stand during his closing argument, but prohibited him from moving freely about the courtroom.  He instead had to stand at counsel table.  I did not use any shackles, gags, or other restraining devices.   I cautioned Isaac prior to his argument the Marshals would be standing due to security concerns.  Isaac did not object.  Trial courts have inherent authority to

22

maintain courtroom security. *Woods v. Theiret*, 5 F.3d 244, 247 (7th Cir. 1993). Although this may often require physically restraining the defendant, the only restriction placed Isaac was the requirement he stay behind counsel table. *Id.* No prejudice resulted from any of my actions during his closing argument. Each action during Isaac's closing argument was necessary to preserve the integrity of the proceedings and ensure the security of all persons in the courtroom.

Isaac's final Sixth Amendment argument maintains his exclusion from two side bar conferences requires a new trial.[9] Stand-by counsel, Geoffrey Seay, was present at these conferences, but Isaac was not. These conferences discussed a jury charge clarifying closing arguments are not to be considered as evidence and correcting a misstatement of the law made by counsel. In *United States v. Mills*, 895 F.2d 897, 904 (2d Cir. 1990), the court found no violation of the Sixth Amendment when the defendant was excluded from sidebar conferences at which his standby counsel participated. The court noted the apparently few instances of exclusion did not constitute "a substantial violation of [the defendant's] *Faretta* rights." *Mills*, 895 F.2d at 904; *see Faretta,* 422 U.S. at 806. Isaac's Sixth Amendment arguments all fail.

Isaac also moves for a new trial asserting his absence from defense counsel's Rule 29 motion prejudiced him. A defendant's attendance is not required at a conference or hearing on a question of law. Fed. R. Crim. P. 43(b)(3). A Rule 29 hearing serves to answer whether *as a matter of law* the Government has failed to present sufficient evidence such that a reasonable juror could find the defendant guilty. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. McNeil*, 887 F.2d 448, 450 (3d Cir. 1990); *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). Isaac was

---

[8] One sidebar conference was held after Isaac's closing argument, the other was held after Hynson's attorney's closing argument.

not acting *pro se* when the Rule 29 hearing occurred.  Because Isaac had no fundamental right to be present at the Rule 29 hearing, no error occurred.

Isaac's final argument for a new trial contends I erred reading the jury Instructions 29 ("Actual or exact amount of controlled substance need not be proven") and 30 ("Knowledge of precise controlled substance need not be proven").  When reviewing the appropriateness of a charge to the jury, a court must consider "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." *United States v. Zehrbach*, 47 F.3d 1252, 1260 (3d Cir. 1995) (quoting *Bennis v. Gable*, 823 F.2d 723, 727 (3d Cir. 1987)).  Refusal to give a proposed instruction is reversible error "only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant." *United States v. Urban*, 4040 F.3d 754, 779 (3d Cir. 2005) (quoting *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999)).

Here, the instructions were appropriate.  Instruction 29, when taken in concert with instruction 42 ("quantity of drug interrogatories"), provides an accurate statement of law as interpreted by the Third Circuit. See *United States v. Sanchez-Gonzalez*, 294 F.3d 563, 565 (3d Cir. 2002).   Instruction 30 was an appropriate statement of the law's *mens rea* requirement, as articulated in *United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir. 2001) (explaining the Government must prove "the defendant's awareness that he engaged in one or more of the active verbs in that provision: manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense").   Each of Isaac's eight grounds for a new trial fail, thus, the entire motion for a new trial is denied.

An appropriate order so follows.

24

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTON |
| | : | |
| v. | : | |
| | : | |
| PRINCE ISAAC | : | NO. 05-576-1 |

## **ORDER**

AND NOW, this 26th day of August, 2008, Defendant Prince Isaac's Post Trial Motion (Document 284) is GRANTED in part and DENIED in part.  Judgment of acquittal is GRANTED as to Counts 22, 25-27.  The convictions for Counts 22, 25-27 are set aside and a judgment of acquittal as to these counts is hereby entered.  The remainder of Prince Isaac's Motion is DENIED.

BY THE COURT:

JUAN R. SÁNCHEZ, J.